UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANET MARIE PHILHOWER,<br><br>          Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>          Defendant.[1] | CIVIL ACTION NO. 3:21-CV-00641<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This is an action brought under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Janet Marie Philhower ("Philhower")'s claims for a period of disability and supplemental security income ("SSI") under Title XVI of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. (Doc. 6). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be **VACATED**, and the case will be **REMANDED** for further consideration.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

On June 25, 2019, Philhower filed applications for Title II and XVI benefits, claiming disability beginning on December 32, 2005. (Doc. 10-6, at 2). Philhower's claims were

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

initially denied by the Social Security Administration on December 6, 2019, and upon reconsideration on June 9, 2020. (Doc. 10-4, at 5, 10, 16, 20). Thereafter, Philhower filed a request for a hearing, which was held before Administrative Law Judge ("ALJ") Randy Riley on September 17, 2020. (Doc. 10-2, at 38-67). In a written opinion dated September 24, 2020, the ALJ determined that Philhower was not disabled and therefore not entitled to the benefits sought.[2] (Doc. 10-2, at 9). Philhower appealed the decision to the Appeals Council, who denied Philhower's request for review on March 18, 2021. (Doc. 10-2, at 2).

On April 8, 2021, Philhower initiated the instant action by filing a complaint. (Doc. 1). The Commissioner responded on August 13, 2021, providing the requisite transcripts from the disability proceedings. (Doc. 9; Doc. 10). The parties then filed their respective briefs, with Philhower alleging three errors warrant reversal or remand. (Doc. 18; Doc. 20).

II.  **STANDARDS OF REVIEW**

To receive benefits under Titles XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his

---

[2] At the administrative hearing, Philhower, through her counsel, amended the alleged onset date of disability to June 25, 2019, and voluntarily elected to withdraw her request for a hearing as it pertains to her application for Title II benefits. (Doc. 10-2, at 41). Finding that Philhower was fully advised of the consequences of her request, including dismissal of the request for hearing regarding her claim for Title II benefits with the result that the reconsideration determination for this claim would become final, the ALJ dismissed the portion of Philhower's request for hearing under Title II. (Doc. 10-2, at 12-13). Thus, the remainder of the ALJ's decision addressed only Philhower's pending application for Title XVI benefits. (Doc. 10-2, at 13).

or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.[3] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

### A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

---

[3] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

3

B.  JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decision maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Philhower was disabled, but whether the Commissioner's determination that Philhower was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of

4

the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.  **THE ALJ'S DECISION**

In a decision dated September 24, 2020, the ALJ determined Philhower "has not been under a disability, as defined in the Social Security Act, since June 25, 2019, through the date the application was filed." (Doc. 10-2, at 26). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 416.920(a).

A.  STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. The ALJ determined Patterson "has not engaged in [SGA] since June 25, 2019, the application date." (Doc. 10-2, at 15). Thus, the ALJ's analysis proceeded to step two.

B.  STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "chronic pain syndrome associated with cervical and lumbar degenerative disc disease and thoracolumbar scoliosis, diabetes mellitus with diabetic peripheral neuropathy, and chronic obstructive pulmonary disease (COPD) with asthma and allergic rhinitis." (Doc. 10-2, at 15). The ALJ also noted the presence of the following non-severe impairments: adrenal mass, migraine headaches, anxiety, depression, hyperlipidemia, thyroid dysfunction, stomach issues, hypertension, sleep apnea, and vision issues. (Doc. 10-2, at 15).

### C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 416.920(d). The ALJ considered

listings 1.04 (disorders of the spine); 3.02 (chronic respiratory disorders); 3.03 (asthma); 9.00 (endocrine disorders); and 11.14 (vascular insult to the brain). (Doc. 10-2, at 18-20). The ALJ determined that none of Philhower's impairments, considered individually or in combination, met or equaled the criteria of listings in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Doc. 10-2, at 18).

### D. Residual Functional Capacity

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)-(c).

Here, the ALJ found that while Philhower's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Philhower's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 10-2, at 21). Considering all evidence in the record, the ALJ determined that Philhower had the RFC "to perform light work as defined in 20 CFR 416.967(b)," subject to the following non-exertional limitations:

7

> [O]ccassionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; and avoid exposure irritants, unprotected heights, and any safety-sensitive or dangerous machinery.

(Doc. 10-2, at 20).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019) (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, the ALJ noted that Philhower has no past relevant work. (Doc. 10-2, at 25). Therefore, the ALJ moved on to step five.

F. STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 416.960(b)(3). If a claimant has the ability

8

to make an adjustment to other work, he or she will not be considered disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, considering Philhower's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Philhower could have performed. (Doc. 10-2, at 25). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Philhower could have performed the requirements of occupations, such as a small products assembler, housekeeping cleaner, and table worker, which are occupations with open positions ranging from 9,200 to 78,000 nationally. (Doc. 10-2, at 26). Accordingly, the ALJ determined that Philhower was not disabled and denied her application for benefits. (Doc. 10-2, at 26).

IV.   **DISCUSSION**

On appeal, Philhower advances three main arguments. First, Philhower asserts that the "ALJ erred and abused his discretion by failing to consider the limitations from [Philhower]'s chronic pain syndrome associated with cervical and lumbar degenerative disc disease and thoracolumbar scoliosis, diabetes mellitus with diabetic peripheral neuropathy, and [COPD] with asthma and allergic rhinitis, in setting for [Philhower]'s RFC." (Doc. 18, at 13). Second, Philhower argues that the ALJ erroneously determined that "the limitations from [Philhower]'s diagnosed and treated depression, anxiety, migraine headaches, vertigo and issues related to an adrenal mass" were non-severe. (Doc. 18, at 22). Third, Philhower asserts that the ALJ failed to assign proper weight to the opinions of consultative exam physician, Ahmed Kneifati, M.D. ("Dr. Kneifati"), "who is the only medical source that physically examined [Philhower] and offered opinions regarding specific physical limitations in terms of [Philhower]'s RFC." (Doc. 18, at 24). In response, the Commissioner contends

9

that substantial evidence supports the ALJ's decision and that the Court should affirm the ALJ's decision. (Doc. 20, at 2).

### A. THE ALJ'S RFC DETERMINATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Philhower argues that the ALJ erroneously failed "to consider the limitations from [Philhower]'s diagnosed and treated depression, anxiety, migraine headaches, vertigo and issues related to an adrenal mass, in setting forth [Philhower]'s RFC, as the ALJ must have improperly determined these disorders to be non-severe." (Doc. 18, at 22). Further, Philhower asserts that "[e]ven if the ALJ correctly determined these disorders as being non-severe, he should have included consideration of some limitations related to these disorders, which have an impact upon her ability to function at some level in terms of her non-exertional limitations." (Doc. 18, at 23-24). In response, the Commissioner submits that substantial evidence supports the ALJ's step two finding because he considered the combined effects of all of Philhower's impairments, severe and non-severe, throughout the subsequent steps of the sequential analysis. (Doc. 20, at 10-11).

In step two of the evaluation process, an ALJ is required to consider whether a claimant's impairments are (1) medically determinable and (2) severe. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921. An impairment is not considered severe if it does not significantly impact a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). To establish the requisite level of limitation, a claimant "must support his or her contentions with objective medical evidence." *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 958 (3d Cir. 2006). If an ALJ determines that a claimant has a severe condition at step two, then the sequential analysis proceeds to step three. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921. As such, generally "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical

condition was found severe at step two." *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013).

"However, finding that an impairment is non-severe at step two does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC." *Montanez v. Saul*, No. 3:18-CV-01913, 2019 WL 4439577, at *5 (M.D. Pa. Aug. 19, 2019) (citation omitted); *see also Hess*, 931 F.3d at 202 (explaining that because the functional limitation findings at step two and the RFC assessment at step four "serve distinct purposes and may be expressed in different ways ... the findings at steps two and three will not necessarily translate to the language used at steps four and five."). Indeed, under the regulations, an ALJ is required to assess all of a claimant's medically determinable impairments – including those that are not severe – in combination when making the subsequent RFC determination. *See* 20 C.F.R. § 416.945(a)(2); *see also Weitzel*, 967 F. Supp. 2d at 1097 ("[A]ll of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity."). As further explained by SSR 96-8p:

> In assessing RFC, the adjudicator *must* consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not "severe." While a "non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184 (emphasis added).

Thus, "[e]ven if the ALJ properly determines that a claimant's impairments are non-severe [at step two] ... a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work." *Marsella v. Comm'r of Soc. Sec.*,

No. 18-CV-2294, 2019 WL 912141, at *9 (D.N.J. Feb. 25, 2019). Similarly, "where the disability analysis continues to Step [Three], an ALJ's erroneous determination of an impairment's non-severity may constitute harmless error, provided that the impairment continues to be factored in." *Rodriguez v. Berryhill*, No. 17-CV-6884, 2019 WL 1013343, at *9 (D.N.J. Mar. 1, 2019); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (failing to determine the severity of a condition at stage two was harmless because the ALJ properly considered it in the evaluation of the claimant's limitations).

In the opinion, the ALJ considered several of Philhower's alleged impairments at step two and found that her depression, anxiety, migraine headaches, vertigo, and issues related to an adrenal mass were medically determinable but non-severe. (Doc. 10-2, at 15). Specifically, the ALJ reasoned that "[t]he record documents a remote history of adrenal mass, incidentally discovered during pelvic imaging, but asymptomatic and requiring no treatment other than monitoring prior to or during the period at issue." (Doc. 10-2, at 15). Similarly, the ALJ noted that Philhower's migraine headaches are recorded in her medical history, "but relevant to the period at issue are controlled with conservative treatment, with no mention of intractable or even frequent headaches since the amended onset date." (Doc. 10-2, at 15). At no point did the ALJ mention vertigo in his opinion, however, the ALJ noted that Philhower "reports medication side effects of tiredness, nausea, and dizziness that affects her functioning." (Doc. 10-2, at 21).

Regarding Philhower's mental impairments, the ALJ explained that the medical evidence relevant to the period at issue showed Philhower "has had almost no treatment for mental disorders and rarely even reports symptoms of the same." (Doc. 10-2, at 16). The ALJ noted that Philhower's only ongoing treatment for mental disorders during the relevant period

is medication provided by her primary care provider, which is "a minimal degree of treatment suggestive of non-severe mental impairments." (Doc. 10-2, at 17). Further, the ALJ stated that objective mental status examination findings are not consistent with more than mild impairment as Philhower's non-psychological provider mini-mental status examinations during the relevant period were normal, with Philhower presenting as alert and fully oriented, in no distress, and with normal mood, affect, behavior, judgment, and thought content. (Doc. 10-2, at 17). The ALJ concluded that because the objective record does not support more than mild limitation in any domain, Philhower's medically determinable mental impairments are non-severe. (Doc. 10-2, at 17).

Philhower argues that the ALJ erroneously failed to include consideration of certain limitations related to Philhower's medically diagnosed impairments, which are consistent with her testimony. (Doc. 18, at 22-24). Specifically, Philhower submits:

> Clearly, the ALJ failed to include sufficient exertional or non-exertional limitations in setting forth [Philhower]'s RFC, in light of these additional disorders, all of which clearly cause more than a slight limitation in terms of [Philhower]'s RFC, and could reasonably be expected to impact [Philhower]'s ability to remain on task, or to complete work of a certain skill level for at leave some portion of the workday.
>
> (Doc. 18, at 23).

The Commissioner, however, asserts that the ALJ properly found her depression, anxiety, migraine headaches, vertigo, and issues related to an adrenal mass to be non-severe. (Doc. 20, at 12). The Commissioner further submits that the ALJ could not have materially erred at step two, given that the RFC accounted for all of Philhower's impairments, severe and non-severe. (Doc. 20, at 11).

As pointed out by the Commissioner, the ALJ did not deny Philhower's claim for Title XVI benefits at step two. (Doc. 20, at 12). Nevertheless, irrespective of whether the ALJ

13

erroneously concluded that Philhower's depression, anxiety, migraine headaches, vertigo, and issues related to an adrenal mass to be non-severe, the Court is not persuaded that the RFC sufficiently accounted for these impairments. *See Marsella*, 2019 WL 912141, at *9; *Rodriguez*, 2019 WL 1013343, at *9. Notably, in his RFC assessment, the ALJ indicated that Philhower's non-severe disorders had already been addressed and would not be discussed again. (Doc. 10-2, at 21). However, "the Commissioner's procedures do not permit the ALJ to simpl[y] rely on his finding of non-severity as a substitute for a proper RFC analysis." *Kich v. Colvin*, 218 F.Supp.3d 342, 355 (M.D. Pa. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)); *see also Soboleski v. Comm'r of Soc. Sec.*, No. 14-CV-3156, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015) (the ALJ's "simple phrase in the step two analysis does not obviate the need for a separate analysis of how Plaintiff's impairment [of irritable bowel syndrome] affects her RFC.").

Notably, the ALJ failed to mention vertigo and any related symptom in his step two analysis.[4] (Doc. 10-2, at 15-16, 56). In refuting the severity of Philhower's medically determinable impairments at step two, the ALJ noted that "the objective record does not support more than mild limitation in any domain." (Doc. 10-2, at 15). In the RFC determination, the ALJ mentioned that Philhower "reports medication side effects of tiredness, nausea, and dizziness that affect her functioning," however, the ALJ never mentions Dr. Kneifati's vertigo diagnosis or Philhower's testimony that she experiences

---

[4] On October 29, 2019, Dr. Kneifati completed an internal medicine examination, which diagnosed Philhower with vertigo. (Doc. 10-9, at 13). Dr. Kneifati noted that Philhower had a history of vertigo since 2017 and that Philhower's last episode was on August 19, 2019. (Doc. 10-9, at 10). Dr. Kneifati explained that during Philhower's episodes, "[s]he feels lightheaded and blacks out. She does not feel any spinning of the room or head spinning. It lasts about an hour and a half. She gets episodes sometimes three times a week." (Doc. 10-9, at 10).

dizziness that causes her to blackout and hit her head. (Doc. 10-2, at 15-16, 56). The RFC evaluation, however, did provide for non-exertional limitations that Philhower should avoid exposure to "irritants, unprotected heights, and any safety-sensitive or dangerous machinery," without any specific reference as to why such limitations were necessary. (Doc. 10-2, at 20). Thus, by acknowledging this medically determinable impairment, albeit, in the context of evaluating an exertional limitation, the ALJ apparently discounted Philhower's testimony at step two to then inextricably credit the same upon formulating the RFC assessment.

"Given the passive reference to the conclusions at Step Two and the opinion's inconsistent treatment of [Philhower]'s symptomology, it is unclear whether the ALJ fully considered 'the limitations and restrictions imposed by all of [Philhower's] impairments' in determining the RFC." *Montanez*, 2019 WL 4439577, at *7 (quoting SSR 96-8p); *see* 20 C.F.R. § 416.945(a)(2); *Weitzel*, 967 F. Supp. 2d at 1097; *Soboleski*, 2015 WL 6175904, at *2. Further, the ALJ failed to identify how the RFC factored in limitations arising from Philhower's medically determinable depression, anxiety, migraine headaches, vertigo, and issues related to an adrenal mass, or otherwise explain why added restrictions, such as the related need for unscheduled breaks and Philhower's rate of abstention, were not necessary. *See Montanez*, 2019 WL 4439577, at *7 (remanding decision when ALJ failed to identify how RFC factored in any limitations arising from claimant's medically determinable stress incontinence and urinary frequency non-severe impairments, or otherwise explain why added restrictions were not necessary).

Accordingly, regardless of whether Philhower's conditions were erroneously considered non-severe impairments at step two, the Court finds that the RFC assessment is not supported by substantial evidence. Therefore, the decision of the Commissioner will be

vacated and this case will be remanded for further proceedings consistent with this Memorandum.

B. THE COURT DECLINES TO ADDRESS PHILHOWER'S REMAINING ARGUMENTS.

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, concluding that the ALJ's RFC assessment is not supported by substantial evidence, the Court declines to address Philhower's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F.Supp.3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Philhower's additional contentions would be futile given that the ALJ's decision concerning Philhower's RFC assessment may yield a different result.

V. **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits are appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further development of the

record. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

VI.     **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Philhower disability benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order will follow.

BY THE COURT:

Dated: August 18, 2022

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**